CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

01/15/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

| | |
|---|---|
| **Manuel Yat-Sacul**, <br><br> Plaintiff, <br><br> v. <br><br> **Williams Tree Service, LLC**, <br> a Virginia limited-liability company, <br><br> Serve: Gregory T. Williams, Registered Agent <br> 309 Ben Venue Rd. <br> Flint Hill, Va. 22627 <br><br> and **Gregory T. Williams**, <br><br> Defendants | **Jury Trial Demanded** <br><br><br> Case No.: 3:19Cv00003 |

# COMPLAINT

### Preliminary Statement

1. Plaintiff Manuel Yat-Sacul brings this case against his former employers: Williams Tree Service, LLC and its member-manager Gregory T. Williams.

2. Yat-Sacul's claims arise from Defendants' failure to pay him the overtime premium required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"). Yat-Sacul worked over 40 hours a week nearly every week throughout his employment, but Defendants never paid him a time-and-a-half overtime premium for his weekly hours worked over 40.

### Jurisdiction and Venue

3. The Court has subject-matter jurisdiction over the FLSA claims under 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question).

4. The Court has personal jurisdiction over both Defendants because they are both domiciled in Virginia, transact business in Virginia, and contract to supply services in Virginia. *See* Va. Code § 8.01-328.1(A)(1)–(2).

5. Venue is proper in the Western District of Virginia because Defendants are both domiciled there, and because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred there. *See* 28 U.S.C. § 1391(b)(2)–(3).

6. The Charlottesville Division is the proper division because Defendants are both domiciled in Rappahannock County. *See* Local Rules 2(a)(3) and 2(b).

## PARTIES

7. Plaintiff Manuel Yat-Sacul is an adult resident of Virginia.

8. Defendant Williams Tree Service, LLC ("Williams Tree Service") is a Virginia limited-liability company located in Rappahannock County, Virginia.

9. Defendant Gregory T. Williams ("Greg Williams") is an adult resident of Rappahannock County, Virginia.

## FACTS

### Defendants

10. Williams Tree Service is a tree-service and landscaping business serving clients in and around Rappahannock County. The company also maintains at its registered address a retail store selling firewood, mulch, straw, hay, fruits and vegetables, flowers, and seasonal gifts, among other things. The store also houses a small suite of offices for Williams Tree Service administrative staff and for Greg Williams.

11. Greg Williams is a member-manager of Williams Tree Service. Upon information and belief, he is the sole member-manager.

12. Greg Williams controls the day-to-day operations of Williams Tree Service.

13. Throughout Yat-Sacul's employment, Greg Williams had the power to hire, fire, or discipline workers at all positions at Williams Tree Service.

14. Upon information and belief, throughout Yat-Sacul's employment, Williams had the sole power to hire, fire, and discipline Williams Tree Service workers.

15. Throughout Yat-Sacul's employment, Greg Williams had the power to direct, control, or supervise his work, whether directly or indirectly through his Superintendent and crew leaders.

16. Defendants directly or indirectly set Yat-Sacul's work schedule, or had the power to do so.

17. Defendants determined Yat-Sacul's pay rate and method of payment.

18. Defendants maintained all records related to Yat-Sacul's employment.

19. Defendants provided Yat-Sacul with all tools and equipment needed to do his job.

20. Upon information and belief, the gross annual business volume of Williams Tree Service exceeded $500,000 at all relevant times.

21. Upon information and belief, at all relevant times, Williams Tree Service had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

22. Upon information and belief, at all relevant times, Williams Tree Service regularly ordered and received supplies that had traveled through interstate commerce.

### Plaintiff's Work Generally

23. Williams Tree Service tree-and-landscaping workers work in crews of four: one crew leader and three rank-and-file laborers. Defendants employed about five or six such crews throughout Plaintiff Yat-Sacul's employment.

24. Plaintiff Manuel Yat-Sacul worked as a rank-and-file laborer throughout his employment. He did not supervise or employ workers of his own.

25. Yat-Sacul lived in housing provided by Greg Williams. Yat-Sacul paid Defendants $225 per month as rent to live in the housing, which was deducted directly from Yat-Sacul's pay.

26. Yat-Sacul worked for Defendants from about March 2016 to around early June 2017, and then from about mid-October 2017 to around July 1, 2018.

27. Yat-Sacul did not hold other employment during those workweeks in which he worked for Defendants.

28. Defendants required Yat-Sacul and his fellow workers to report to the Williams Tree Service store each day at around 7 a.m.

3

Case 3:19-cv-00003-NKM   Document 1   Filed 01/15/19   Page 3 of 7   Pageid#: 3

29. Greg Williams was always or almost always at the store when Yat-Sacul and his fellow workers arrived for work each day.

30. Upon arriving, Yat-Sacul and his fellow workers would pick up their tools and form up into their crews. Greg Williams would give a Williams Tree Service Superintendent a written list of that day's work assignments, and the superintendent then handed out the day's work assignments to each Williams Tree Service crew leader. The crew leaders would then take their crews to their assigned worksites and perform tree care or landscaping work for Williams Tree Service clients.

31. Upon information and belief, Greg Williams decided or had the power to decide which crews would be assigned to a given job each day.

32. At the end of each work day, Yat-Sacul returned to the Williams Tree Service store to drop off his tools. After Defendants installed a punch-clock at the store in 2018, Defendants also required Yat-Sacul to punch out upon returning to the store at the end of each work day.

33. Yat-Sacul had a regular work schedule of Monday to Saturday throughout his employment. On some weeks, he also worked Sunday.

34. On weekdays, Yat-Sacul primarily performed tree-service work. His tasks included tree removal, trimming tree branches, hauling branches to a wood chipper, and bringing the wood chips back to Williams Tree Service to be turned into mulch. On the weekends he primarily worked hauling firewood. In about four of his workweeks, Yat-Sacul also picked apples for part or all of the week.

35. Yat-Sacul and his fellow rank-and-file workers were supervised primarily by their respective crew leaders. A Williams Tree Service Superintendent also visited each of the day's worksites about once a day, spending anywhere from an hour to half a day at a given project, in order to provide project oversight, inspection, and troubleshooting. Greg Williams also visited the worksites from time to time to see if the workers were working hard enough for his satisfaction. If Williams felt dissatisfied with his workers' efforts, he would yell at the workers and sometimes strike them with a closed fist.

36. Yat-Sacul's daily hours of work varied. His start time each day was almost always around 7 a.m., but his stopping time varied depending on how far the day's worksite was from the Williams Tree Service store.

37. Yat-Sacul almost always worked until at least 5 p.m. and sometimes as late as 8 or 9 p.m.

## Pay Practices and Pay Problems

38. Throughout Yat-Sacul's employment, Defendants paid Yat-Sacul and his fellow workers weekly, on Fridays. He was always paid in cash, which he received in an envelope handed to him by Greg Williams or one of his secretaries.

39. Defendants never gave Yat-Sacul wage statements or any other documents that memorialized the hours that he had worked during the week or the wages that he had been paid for that week's work.

40. In 2016 and 2017, Defendants paid Yat-Sacul at a flat rate of $100 per day, even in those workweeks in which he worked over 40 hours.

41. Sometime in early 2018, Defendants changed to an hourly pay structure. Upon information and belief, this change was instituted by Greg Williams. Under this pay structure, Defendants paid Yat-Sacul at a fixed hourly pay rate of $10 per hour for all hours worked, even in those workweeks in which he worked over 40 hours.

42. During those workweeks in which Yat-Sacul worked over 40 hours, Defendants never paid him a time-and-a-half overtime premium for his weekly hours worked over 40.

43. When Defendants changed to an hourly pay structure, Defendants also installed a punch-clock in the Williams Tree Service store. Defendants required Yat-Sacul to punch in upon arriving at the store to begin work and to punch out again upon returning to the store at the end of the workday.

44. Upon information and belief, Defendants did not keep notices posted in a conspicuous place explaining the Fair Labor Standards Act, as required by U.S. Department of Labor regulations. *See* 29 C.F.R. § 516.4.

45. Defendants required Yat-Sacul to wear a Williams Tree Service uniform. Defendants "rented" these uniforms to Yat-Sacul and his fellow workers at a rate of $20 per month, which they deducted from his pay. Yat-Sacul did not authorize this deduction in writing.

46. Defendants deducted $225 from Yat-Sacul's pay each month as rent. Yat-Sacul did not authorize this deduction in writing.

## End of Yat-Sacul's Employment

47. Yat-Sacul's last day of work was on or around July 1, 2018. On or around July 2, 2018, Greg Williams went to the house where he was renting a room to Yat-Sacul. Upon finding Yat-Sacul sitting at a table drinking beer, Williams punched Yat-Sacul in the face, slammed his head into the table, dragged him outside, and threw him to the ground, where he lay

5

Case 3:19-cv-00003-NKM   Document 1   Filed 01/15/19   Page 5 of 7   Pageid#: 5

unconscious for several minutes. Upon regaining consciousness, Yat-Sacul gathered his belongings from the house, left the premises, and did not return.

## CLAIM FOR RELIEF

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

48. At all times relevant to this action:

   - Manuel Yat-Sacul was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);

   - Defendants were Yat-Sacul's "employers" within the meaning of 29 U.S.C. § 203(d);

   - Defendants "employed" Yat-Sacul within the meaning of 29 U.S.C. § 203(g); and

   - Yat-Sacul was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

49. Defendants' FLSA violations were "willful" within the meaning of 29 U.S.C. § 255(a).

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

50. Manuel Yat-Sacul worked over 40 hours in nearly every one of his workweeks.

51. Defendants never paid Yat-Sacul a time-and-a-half overtime premium for any of the hours that he worked beyond 40 in any such workweek.

52. By failing to pay Yat-Sacul an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that the Court grant him the following relief:

53. Award Plaintiff his actual damages under the FLSA in the amount of all unpaid overtime wages, jointly and severally against all Defendants, in an amount to be proven at trial.

54. Award Plaintiff an additional amount as liquidated damages equal to his unpaid overtime wages, jointly and severally against all Defendants, pursuant to 29 U.S.C. § 216(b);

55. Award Plaintiff his costs and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b), jointly and severally against all Defendants; and

56. Any other relief that the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz             Date: January 15, 2019
Nicholas Cooper Marritz (VA Bar No. 89795)
Jason B. Yarashes (VA Bar No. 90211)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 720-5607
F: (703) 778-3454
E: nicholas@justice4all.org

*Counsel for Plaintiff Manuel Yat-Sacul*